

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2009

# Xiu Yun Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3044

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Xiu Yun Chen v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1324.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1324

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 08-3044 and 08-3045
(Consolidated)
_____

XIU YUN CHEN and YOU CHEN
Petitioners

v.

THE ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petitions for Review of an Order
of the Board of Immigration Appeals
Agency Nos. A97 753 222 and A97 753 223
Immigration Judge: Elizabeth A. Kessler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 11, 2009

Before: MCKEE, HARDIMAN and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed : May 22, 2009)

_____

OPINION

_____

PER CURIAM

Xiu Yun Chen and You Chen have filed petitions for review of an order of the

Board of Immigration Appeals, which dismissed their appeal from an Immigration

Judge's (IJ's) final removal order. We will deny the petitions for review.

Because the parties are familiar with the facts, we will recount them in summary fashion. The Chens, a married couple from China, entered the United States without inspection in October 2002. Xiu Yun Chen filed an asylum application in October 2003, based on her allegation that she had been persecuted in China.[1] Chen testified that she and her husband had their first child in 1994. Thereafter, Chinese birth control cadres required her to use birth control; first, a device implanted in her arm, and later, an IUD. In early 1999, she had the IUD removed because she wanted to have more children. She became pregnant in February 1999 and went into hiding at her aunt's home. In June 1999, police came to her aunt's home to investigate a nearby robbery. When they saw Chen, they noted that she was not registered in that area and questioned her about her

---

[1] Her husband, You Chen, apparently intended at first only to gain derivative asylum through his wife's application, pursuant to 8 U.S.C. § 1158(b)(3)(A). The Government raised some questions about the timeliness of Xiu Yun Chen's asylum application, and noted that if her application were untimely, she would only be eligible for withholding of removal or protection under the Convention Against Torture (CAT). No doubt because a spouse may not derive protection through his wife's successful withholding or CAT claim, You Chen later filed his own asylum application (which would also be construed as an application for withholding of removal and protection under the CAT). You Chen did not, however, include any claims that were different from his wife's, nor did he allege that he personally experienced persecution. See Li-Zheng v. Attorney General, No. 07-2135, __ F.3d __, 2009 WL 398257 (3d Cir. Feb. 19, 2009) (alien not entitled to refugee status based on persecution of his spouse). We therefore do not construe his application as an application for asylum in his own right, but rather as an application for derivative asylum. (The Government ultimately did not pursue its argument that Xiu Yun Chen's asylum application was untimely.) References in this opinion to "Chen" are to Xiu Yun Chen, the lead applicant.

then-obvious pregnancy. The police left, but returned one-half hour later with a birth control officer and a village officer and forced Chen to come with them to the hospital. At the hospital, she received an injection near her navel and was forced to have an abortion, although she did not want one. While she was recovering in the hospital, somebody at the hospital put a piece of paper, a "birth control surgery certificate," in her hand. The Chens left for the United States in October 2002, with the help of snakeheads, because they wanted to have more children. The Chens had a second child in the United States in December 2003.[2]

The IJ made an adverse credibility finding, based on investigatory reports that concluded that the birth control surgery certificate was invalid. The Forensic Document Laboratory (FDL) of the United States Department of Homeland Security (DHS) reported that the certificate was "not genuine," noting that "[p]hysical evidence establishes that the document is same source associated with vendor-produced documents seen in unrelated FDL case submissions." A.R. 172. In a second investigation, an investigator from the DHS's United States Citizenship and Immigration Services whited out Chen's name on the certificate and sent a copy of it to Guantou Central Hospital of Lianjiang County to be verified. The hospital replied that the certificate was fabricated for two reasons: first, the certificate was signed by a doctor named Lin, Ying, but no doctor by that name worked at the Department of Gynecology and Obstetrics at the hospital in 1999; second, the

---

[2] The Chens' first son remained behind in China.

3

certificate indicated that the medication "ethacridine" had been used in the procedure, but it is not necessary to use that medication for abortion operations. A.R. 188. In addition to finding that Chen was not credible, the IJ also expressed concern about Chen's failure to provide corroboration from her aunt (who hid her) and her sister (who advised her to have her IUD removed). The IJ denied relief, except that she granted the Chens' application for voluntary departure.

On appeal, the BIA found that the IJ's adverse credibility finding was not clearly erroneous, based on the investigations that found the abortion certificate not to be genuine, and found no clear error in the IJ's conclusion that the certificate was central to Chen's claim. The BIA also found no error in the IJ's finding that Chen failed to corroborate her claim with evidence that she could reasonably be expected to produce. The BIA therefore dismissed the Chens' appeal. The Chens each filed a timely petition for review, which were consolidated.

An adverse credibility finding should be upheld to the extent it is supported by reasonable, substantial and probative evidence on the record considered as a whole, and should only be reversed if there is evidence so compelling that no reasonable factfinder could conclude as the IJ did. Caushi v. Attorney General, 436 F.3d 220, 225 (3d Cir. 2006). Any discrepancies must involve the heart of the claim. Id. at 229.[3] We hold that

_____

[3] The provisions of the Real ID Act of 2005 regarding credibility do not apply to cases such as this one, where the asylum application was filed before the enactment of the Real ID Act. Real ID Act of 2005, Pub. L. No. 109-13, Div. B, § 101, 119 Stat. 231 (May 11,

4

the adverse credibility finding here is supported by substantial evidence.

Chen challenges the agency's determination that she was not credible. In particular, she assails the reliability of the DHS's investigative reports concluding that her birth control surgery certificate was fabricated. She argues that the investigator's report was based upon the statements of hospital personnel who had incentive to be less than forthright, given that an accusation of human rights violations was at issue. She insists that the certificate she presented was the one that was given to her at the hospital.

We are not persuaded by Chen's arguments. First, her assertion that the Chinese verifying authorities were not candid in their assessments is based on her own speculation. Second, Chen has not adequately explained why the hospital would hand her a fake certificate[4] rather than no certificate at all.

Because the record does not compel us to find that Chen was credible, we do not reach the issue of whether the IJ properly expected corroboration of her claim. For the foregoing reasons, we will deny the petitions for review.

---

2005).

[4] Chen speculates in her brief that the hospital might have given her a fake certificate because they did not want it known that they forced her to have an abortion. But see Chen v. Gonzales, 434 F.3d 212, 219 (3d Cir. 2005) (referring to "the common sense notion that government officials who force a woman to abort a child would hardly be likely to issue a certificate attesting to that fact, especially since the Country Report indicates that use of such force is not official government policy").